UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | 2:23-CR-00047-DCLC-CRW-3 |
| v. | ) | |
| DELONDA DANIELLE SWARTZ, *et. al* | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Delonda Swartz filed a Motion to Suppress [Doc. 98] in which she seeks to suppress evidence seized following the April 8, 2021 search and seizure of her vehicle. An evidentiary hearing on the matter was held on February 29, 2023. For the reasons provided herein, Defendant's Motion to Suppress [Doc. 98] is **DENIED**.

## I. FINDINGS OF FACT

At the evidentiary hearing, the Government called two witnesses: Kingsport Police Officers George Myers and Robert Hughes. Based on the testimony at the hearing, the Court makes the following findings of fact. Shortly before midnight on April 8, 2021, a confidential informant (CI) told Kingsport Police Department ["KPD"] Officer George Meyers that the CI's cousin, Christopher Lance, was on his way to the Americourt Hotel ["the Hotel"] with some "dope." The CI also told him that Mr. Lance was traveling in a white car and would soon be exiting John B. Dennis Highway. Officer Meyers communicated this information with KPD Officer Robert Hughes and other officers patrolling the area. At the hearing, Officer Meyers said that the Hotel was known for a lot of drug activity.

1

Not long after receiving Officer's Meyer's communication, Officer Hughes observed a white BMW car, that did not have a visible license tag, pull into the Hotel. Officer Hughes initiated a traffic stop based on an apparent missing tag, and as he approached the car, he noticed a temporary tag taped to the inside of the rear window. Officer Hughes spoke to the car's occupants and determined that the driver was Defendant and that the passenger was Mr. Lance [Doc. 108, pg. 2]. Officer Hughes informed Defendant that the reason for the stop was improper display of her car's tag. Officer Hughes testified that Defendant appeared agitated and had an "argumentative tone" when questioned about her temporary tag. Officer Hughes noticed Defendant's hands were swollen or "puffy" and, based on his experience, knew this to be a common side effect in methamphetamine users. Officer Hughes asked if Defendant consented to a search of the car, and she declined. Officer Meyers was also at the scene and spoke with Mr. Lance, who appeared to be nervous. Officer Hughes returned to his patrol car to check Defendant's driving status, and Officer Meyers told him about Mr. Lance's nervous behavior. At the hearing, Officer Hughes testified that while in his patrol car, he checked Defendant's driver's license status and also confirmed that the car was properly registered. He also determined there were no outstanding warrants for Defendant. This check took approximately three minutes. Officer Hughes testified that at this point, he had confirmed Defendant's information, all her information was in order, and the reason for the stop concluded. However, based on Defendant's tone and swollen hands, Officer Hughes said he had reasonable suspicion that Defendant was involved in illegal drug activity and decided to conduct a K-9 sniff.

Officer Hughes returned to Defendant's car and asked Defendant and Mr. Lance to exit the car so that he and his K9 partner could perform a dog sniff of the car. Mr. Lance got out of the car, Officer Meyer did a brief pat down for weapons, and then Mr. Lance ran from police. This

2

occurred approximately ten minutes after Officer Hughes initiated the stop. The traffic stop was further extended by approximately thirty minutes while Officers Hughes and Meyers attempted to apprehend Mr. Lance. After an unsuccessful pursuit, Officers Hughes and Meyers returned to the Hotel, where a third officer had detained Defendant. Officer Hughes then conducted the K9 search and observed a positive alert. Officers searched the vehicle and seized a black bag containing seven grams of suspected heroin, a vial containing a small amount of methamphetamine, 2 grams of suspected marijuana, baggies, a scale, a spoon, and makeup. Officers seized a white bag containing $2,337 in cash, two syringes, and a loaded handgun. Officers also seized Defendant's cell phone.

Before the K-9 sniff and subsequent search of the car, Officer Meyers administered a *Miranda* warning to Defendant in the presence of Officer Hughes. Defendant said she understood her rights and waived them. Officer Hughes confirmed that Defendant waived her rights. After the search, Defendant claimed ownership of the white bag, which contained the gun but no drugs. Later, the United States ("the Government") indicted Defendant for conspiracy to distribute 50 grams or more of methamphetamine and possession of a firearm in furtherance of a drug trafficking offense.

## II. PARTIES' POSITIONS

First, Defendant seeks to suppress the evidence found following the search of her vehicle because the stop was prolonged and thus illegal [Doc. 98, pg. 2]. She contends that the initial traffic stop was pretextual, despite the tag being difficult to see [Doc. 98, pg. 4]. Defendant argues that even if the initial stop is legal, it should not have taken more than a few minutes for officers to confirm the status of the car's registration [Doc. 98, pg. 4]. The Government responds that the

stop was not unreasonably extended before the K9 alerted to the presence of narcotics [Doc. 108, pg. 4].

Defendant also argues that her alleged statements to officers should be suppressed because officers had not given Defendant a *Miranda* warning before officers interrogated her or before Defendant claimed ownership of the white bag, which contained cash, drug paraphernalia, and a loaded gun [Doc. 98, 5]. Defendant argues that she was asked about the white bag at a time during which she was not free to leave, thus officers subjected Defendant to a custodial interrogation [Doc. 98, pg. 6]. The Government responds that Officer Meyers read Defendant a *Miranda* warning, Defendant waived her rights and agreed to speak with Officer Meyers, and then claimed ownership of the white bag [Doc. 108, pg. 6].

### III.    ANALYSIS

#### A.    The Traffic Stop

The Fourth Amendment protects against "unreasonable" seizures. U.S. Const. amend. IV. In the traffic stop context, officers cannot prolong the stop "beyond the time necessary to investigate (and write a ticket for) a traffic violation unless the officers have reasonable suspicion that the stopped vehicle's occupants are engaging in other crimes." *Klaver v. Hamilton Cnty., Tennessee*, No. 22-5083, 2022 WL 16647970, at *3 (6th Cir. Nov. 3, 2022), *cert. denied sub nom. Wilkey v. Klaver*, 143 S. Ct. 1004, 215 L. Ed. 2d 139 (2023). In *Klaver*, the Sixth Circuit described the legal rule addressing this situation as one requiring the answer to two questions: Did the officers prolong the stop beyond the time necessary to resolve the underlying violation? If so, did the officers have reasonable suspicion to believe that the suspect was engaging in other crimes? *Id*.

The answer to the first question in this case is easy. At the evidentiary hearing, the officer testified that he activated his blue lights when Defendant had pulled into the parking spot at the

4

Americourt Hotel because he did not think the car's tag was properly displayed. He testified that when he approached the vehicle, he then clearly saw the temporary tag taped to the inside of the rear window. He did not indicate that he believed this to violate Tennessee state law. He asked for Defendant's driver's license, registration and insurance and engaged in conversation with Defendant. He commented that she had an "argumentative tone," and he observed what he thought to be "puffy" hands which to him was an indicator of a methamphetamine user. Officer Meyers was also present and spoke with the passenger, Mr. Lance. He noted Mr. Lance's nervousness. Both returned to the vehicle to complete the mission of the stop. Rather than running the dog around the vehicle while the other officer called dispatch and checked the status of the driver's license, they both remained in the vehicle. The officer determined Defendant's driver's license was in compliance, she had insurance, and her registration was all clear. At the hearing, Officer Hughes testified that at that point the purpose of the traffic stop had ended. All he needed to do was return Defendant's license and other paperwork. Both officers exited the patrol car and approached Defendant's vehicle. Officer Hughes returned Defendant's license and paperwork.

At this point, Officer Hughes ordered Defendant and the passenger out of the vehicle to conduct a dog free-air sniff around the vehicle. Thus, under these facts, by the officer's own testimony, when he ordered Defendant out of the vehicle, he had already completed all tasks associated with the reason for the stop.[1] "When an officer stops a vehicle for a traffic violation, the officer generally may detain the driver only for the time necessary to complete the tasks associated with the reason for the stop." *Klaver*, 2022 WL 16647970, at *3. As noted in *Klaver*, "a canine officer may walk a dog around a car during the time that another officer completes a

---

[1] The Court notes that there is no video evidence of this stop because, unlike the law enforcement departments around the area, Kingsport Police Department has declined to use body cams or dash cams to provide video evidence of officer interaction with the public.

5

ticket." *Id.* But "once the traffic-related basis for the stop ends (or reasonably should have ended), the officer must justify any further "seizure" on a reasonable suspicion that the driver is committing those other crimes." *Id.* And walking a drug-sniffing dog around the car after the purposes of the stop have concluded necessarily prolongs the stop.[2]

Having found that the officers prolonged the duration of the stop, the next issue the Court must address is whether the officers had a reasonable and articulable suspicion that criminal activity was afoot to justify further detention of the occupants of the vehicle. In addressing this issue, the Court considers the totality of the circumstances. *United States v. Calvetti*, 836 F.3d 654, 666 (6th Cir. 2016). Reasonable suspicion "must be based on specific, objective facts" and "the totality of the circumstances in place at the time of seizure." *United States v. Johnson*, 620 F.3d 685, 692 (6th Cir. 2010); *Calvetti*, 836 F.3d at 666. At the evidentiary hearing, the officer testified that the basis for extending the stop was the "argumentative tone" of Defendant, her "puffy" hands, her presence at Americourt, a known high crime area, and the passenger's nervousness. Also a factor was the known informant who correctly predicted that Mr. Lance would show up at the Americourt Hotel in a white car with the intention of engaging in drug trafficking.

Reasonable suspicion "'requires more than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard.'" *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008) (citation omitted). Reasonable suspicion for prolonging a traffic stop requires "only that the officer

---

[2]  In *Rodriguez*, the Supreme Court has adopted a "bright-line rule" that officers cannot continue to investigate other crimes for periods longer than needed to complete the traffic stop unless they have reasonable suspicion. The Sixth Circuit has also been clear that "[o]nce the purpose of the initial traffic stop is completed, an officer cannot further detain the vehicle or its occupants unless something happened during the stop to cause the officer to have a 'reasonable and articulable suspicion that criminal activity [is] afoot.'" *United States v. Calvetti*, 836 F.3d 654, 665-66 (6th Cir. 2016) (quoting *United States v. Davis*, 430 F.3d 345, 353 (6th Cir. 2005)).

have 'a moderate chance' of finding evidence of illegality on further investigation." *United States v. Williams*, 68 F.4th 304, 308 (6th Cir. 2023) (quoting *United States v. McCallister*, 39 F.4th 368, 373-74 (6th Cir. 2022)).

Thus, the issue presented here is whether Officer Hughes had reasonable suspicion to extend the duration of the stop. The Court concludes that he did. First, law enforcement had received a tip from a known, although unvetted, source that Mr. Lance, the CI's cousin, would be distributing drugs at the Hotel and that he would be arriving in a white car. The tip was from a relative of the suspect. A tip may be deemed "sufficiently reliable to create reasonable suspicion of criminal activity" if it contains information about a suspect's future actions that law enforcement officials can subsequently independently verify. *Navarette v. California*, 572 U.S. 393, 398 (2014) ("By accurately predicting future behavior, the tipster demonstrated a special familiarity with [the suspect's] affairs, which in turn implied that the tipster had access to reliable information about the individual's illegal activities."). That was certainly the case here. Moreover, officers were able to corroborate innocent details provided by the informant. *See Alabama v. White*, 496 U.S. 325, 330 (1990). In *White*, an anonymous phone tip to law enforcement stated that a female would be driving from a particular apartment building at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be driving to a specific motel, and that she would be transporting cocaine. *Id.* at 327. The Supreme Court held that that law enforcement's corroboration of the innocent details made the top sufficiently reliable to create reasonable suspicion of criminal activity to justify the officer's investigatory stop of the vehicle as it approached the hotel. *Id.* at 332. Here, Officer Hughes, who was at the Hotel, observed Mr. Lance arrive in a white vehicle as a passenger just as the informant had predicted. In addition, Defendant's and Mr. Lance's arrival occurred late at night in a high crime area. Officer Meyers

testified that the Hotel was a very common place for drug activity and that he responded to drug related incidents at the hotel almost daily. The officers also observed Defendant's agitated tone and Mr. Lance's nervous demeanor. Moreover, during the stop, the officer observed Defendant's "puffy" hands, which Officer Hughes, based on his experience, knew to be common in methamphetamine users. *See Williams*, 68 F.4th at 308 ("In assessing whether reasonable suspicion existed, we 'take the facts together,' giving due weight to the officer's 'experience and specialized training.'") (quoting *United States v. McCallister*, 39 F.4th 368, 373-74 (6th Cir. 2022)). And in making that determination, "[t]he bar is low." *Id.* While this is a close case, considering the totality of the circumstances, the Court finds that the officers had reasonable suspicion to support extending the stop. That Mr. Lance ultimately fled the scene further justifies the officer continuing to detain Defendant until such time as the canine free air sniff occurred. *See United States v. Dotson*, 49 F.3d 227, 230 (6th Cir. 1995)(determining that defendant's unprovoked flight at the sight of "civilian-clad individuals in unmarked vehicles" caused the officers' reasonable suspicion that defendant was involved in money laundering to ripen into probable cause); *see also United States v. Williams*, 475 F. App'x 36, 39-40 (6th Cir. 2012)("[I]f officers have reasonable suspicion that an individual has committed or is committing a crime, and when approached by officers the individual flees or attempts to flee, the reasonable suspicion 'ripens' into probable cause." (citing *Dotson*, 49 F.3d at 230-31)).

**B.** *Miranda* **Waiver**

Officers must first apprise suspects of their *Miranda* rights before interrogating suspects in custody. *Miranda v. Arizona*, 384 U.S. 436 (1966). Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444. When determining the

8

validity of a *Miranda* waiver, the "question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). Here, Officer Meyers administered a *Miranda* warning to Defendant before searching her car, and Officer Hughes witnessed the exchange. Following the warning, Defendant stated that she understood her rights and voluntarily waived them. Officers searched Defendant's car, and Defendant claimed ownership of the white bag. Contrary to Defendant's argument in her brief that the warning occurred after her bag, both Officers Meyers and Hughes testified that the warning was before the search of the car and before Defendant made any statements regarding the white bag. Moreover, Defendant presented no proof at the hearing to the contrary. Accordingly, Defendant knowingly and voluntarily waived her rights before the search of her car and subsequent statements. *See Butler*, 441 U.S. at 373.

### III. CONCLUSION

Based on the foregoing, Defendant's Motion to Suppress [Doc. 98] is **DENIED**.

**SO ORDERED:**

s/Clifton L. Corker  
United States District Judge